**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JEFFREY A. CHEESEMAN,**

      **Plaintiff,**

                                   **Civil Action 2:20-cv-2431**
                                   **Judge James L. Graham**
      **v.**                            **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jeffrey A. Cheeseman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 8). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff applied for disability insurance benefits on October 25, 2016, alleging disability beginning August 15, 2016. (R. at 172-173.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 107-110, 112-114.) Upon request, a hearing was held on December 14, 2018, in which Plaintiff appeared and testified. (R. at 32-72.) A vocational expert ("VE"), Polly McKaken, also appeared and testified at the hearing. (*Id.*) On March 11, 2019, Administrative

Law Judge Kari Deming ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12-31.)  On March 16, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.  RELEVANT HEARING TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff testified at the December 2018 administrative hearing.  (R. at 40-65.)  Plaintiff testified that he most recently had worked in May 2016.  (R. at 43.)  In that job, Plaintiff did roadside service calls for AAA, which included "everything from changing tires to hauling things up and carting them away."  (*Id.*)  Plaintiff estimated that he lifted between thirty-five (35) and forty (40) pounds for that job.  (R. at 44.)  Plaintiff testified that he also previously had worked as a groundskeeper, performed siding and roofing and construction work, and been a truck driver.  (R. at 44-45.)  Plaintiff testified that, as a truck driver, he lifted between forty (40) and fifty (50) pounds.  (R. at 45.)

Plaintiff was asked about his alleged onset date of August 15, 2016, and testified that he got a cold around that time and could barely breathe.  (R. at 47.)  Plaintiff said that was the beginning of his cardiac problems, and he still has a heart condition and blood pressure problems.  (R. at 47-48.)  Plaintiff testified that he has been on three or four different medications for his heart condition, and he has had to change medications as a precautionary measure related to his kidneys.  (R. at 49.)  Plaintiff testified that when his blood pressure is low, he gets aggravated and experiences mood swings, and his left hand constantly shakes, affecting his ability to write and eat.  (R. at 50.)  Plaintiff also testified that he has tendonitis in his elbows

2

and severe carpal tunnel in his hands.  (R. at 51-52.)  With the carpal tunnel, Plaintiff testified

that he has neck pain as well as numbness and tingling in his arms.  (R. at 52-54.)

      Plaintiff testified that he also has trouble standing and sitting because he has restless leg

syndrome.  (R. at 55.)  Specifically, Plaintiff testified that he can only sit for about ten or twenty

minutes before he has to get up and move around, and that he can only stand for ten or fifteen

minutes at a time before needing to sit.  (R. at 56.)  Plaintiff testified that he can only walk for

about a block before getting tired, and that it used to take about twenty or twenty-five minutes to

mow his lawn but now it takes him almost an hour because he needs to take breaks.  (*Id.*)

Plaintiff testified that he takes about four or five fifteen-minute breaks each day, in addition to

lunch breaks.  (R. at 57.)

      Plaintiff testified that he wasn't sure if he was experiencing anxiety after his heart

trouble, but he feels nervous and he doesn't like to go out to eat anymore as a result.  (R. at 57-

58.)  Plaintiff testified that he gets aggravated by people pretty quickly because of his blood

pressure, and he experiences mood swings about three times a week that make people not want

to be around him.  (R. at 58-59.)  Plaintiff also testified that he has arthritis in his hip and his

knees, and that it hurts when he gets up out of a vehicle or a chair.  (R. at 59-60.)  Plaintiff

testified that his knees hurt more than his hip, and that it hurts when he walks.  (R. at 60.)

Plaintiff testified that he has trouble concentrating and forgets things a lot, including to take his

medicine.  (*Id.*)

      Plaintiff testified that in a normal day, he watches about four or five hours of television

and then he usually just sits at the kitchen table.  (R. at 61.)  Plaintiff testified that he does not

cook, clean, do housework, or do laundry, and although he used to hunt and fish he hasn't done

so in about two and a half years because he doesn't have the patience for it.  (R. at 61-62.)

Plaintiff testified that he tried to go back to work but couldn't, because he couldn't sit still and he "just didn't feel right."  (R. at 62.)  Plaintiff also testified that he frequently is tired because of his heart condition, and that he has sleep apnea that he treats with a BiPAP machine.  (R. at 62-63.)  Plaintiff testified that he wears braces at night for his carpal tunnel, and that he is on arthritis medication but does not experience any side effects.  (R. at 63-64.)

## B.    Vocational Expert's Testimony

Ms. Polly McKaken testified as the VE at the administrative hearing.  (R. at 65-72.)  Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform the following jobs that exist in significant numbers in the national economy:  order checker, bench assembler, and hand packager.  (R. at 68-69.)

## III.  RELEVANT RECORD EVIDENCE

## A.    Fairfield Medical Center

On April 20, 2016, Plaintiff presented to the emergency department at Fairfield Medical Center complaining of shortness of breath and a mild productive cough.  (R. at 567.)  Plaintiff reported that he had previously been diagnosed with hypertension, but he had not been treating it.  (*Id.*)  Plaintiff was admitted "for further examination of his probable congestive heart failure." (R. at 568.)  Upon further examination, treating physician Isteaq Ahmed, MD, noted that he "has clinical signs and symptoms of congestive heart failure" and prescribed Plaintiff various medication.  (R. at 565.)  Specifically, Plaintiff underwent an echocardiogram that showed severe cardiomyopathy with moderate enlargement of the left ventricle and ejection fraction of 20-25%.  (R. at 574.)  Upon discharge on April 22, 2016, Plaintiff was diagnosed with:  (1) acute new onset acute systolic congestive heart failure; (2) nonobstructive coronary artery disease; (3)

4

noischemic cardiomyopathy of unknown etiology; (4) hypertensive urgency; (5) hyperlipidemia; (6) tobacco abuse; and (7) acute bronchitis.  (R. at 565)  On April 29, 2016, Plaintiff saw Jill L. Kennedy, CNP, for a consultation.  (R. at 563-564.)  Plaintiff said he had experienced a cough but otherwise was feeling well, and he had been slowly increasing his activity and complying with his diet and medications without problems since being discharged. (R. at 563.)

On May 5, 2016, diagnostic images of Plaintiff's chest were normal.  (R. at 562.)  On January 26, 2017, Plaintiff was admitted to the emergency department with complaints of chest pain after chopping some wood, but treating physician Douglas Pope, MD, determined it "was likely due to the change in his medications."  (R. at 395.)  On June 22, 2017, Plaintiff underwent diagnostic imaging of his feet, ankles, knees, and hips, which were generally normal.  (R. at 700-706.)  On November 6, 2017, Plaintiff underwent additional diagnostic imaging of his lumbar spine, pelvis, and right hip, which showed mild right hip degenerative changes but were otherwise normal, with "[n]o acute radiographic finding to account for [Plaintiff's] low back pain."  (R. at 716.)

In January 2018, Plaintiff appeared at Fairfield Medical Center Outpatient Therapy Services for physical therapy to improve his hip pain and his difficulty walking.  (R. at 720-724, 729-731.)  Plaintiff was scheduled for twelve physical therapy appointments, but he only attended three appointments.  (*Id.*)  After failing to show up for a third straight scheduled appointment on February 9, 2018, he was administratively discharged from physical therapy.  (R. at 720.)

On May 7, 2018, Plaintiff underwent x-rays of his left shoulder, which were unremarkable, x-rays of his cervical spine, which showed mild degenerative disc disease and

mild facet arthropathy without acute osseous abnormality identified, and x-rays of his thoracic spine, which showed mild degenerative disc disease. (R. at 775-777.) On July 13, 2018, an x-ray of Plaintiff's chest showed low lung volumes and no acute cardiopulmonary process. (R. at 773.) On September 5, 2018, Plaintiff underwent an MRI of his cervical spine, which revealed multilevel degenerative disc disease and foraminal narrowing. (R. at 770-771.)

**B.     William T. Abraham, MD**

On September 28, 2017, Plaintiff was referred by his primary care physician to William T. Abraham at the Ohio State University Wexner Medical Center. (R. at 606.) Plaintiff reported that he was diagnosed with hypertension in 1997, and his wife added that they "have never been able to get it under control." (*Id.*) Plaintiff reported chest pain three to five times per week, as well as shortness of breath, palpitations, lightheadedness, syncope, PND, orthopnea, and lower extremity swelling. (*Id.*) He also reported sweating and getting the "shakes," having been diagnosed with an essential tremor. (*Id.*) Cardiology Fellow Katherine S. Dodd, DO, MPH, noted that they would treat Plaintiff for chronic systolic heart failure/idiopathic cardiomyopathy, which was likely due to hypertensive heart disease, as well as uncontrolled hypertension and chest pain. (R. at 608-609.) On November 19, 2017, Plaintiff returned for a follow-up visit. (R. at 621.) Plaintiff's blood pressure was "much improved," and he was instructed to continue a variety of medication and to exercise regularly. (R. at 624.) Plaintiff returned on October 11, 2018, and Dr. Dodd wrote that his "[b]lood pressure is better controlled and he has no overt signs or symptoms of heart failure." (R. at 628.)

**C.     Marc E. Miller, Ph.D.**

Plaintiff saw neuropsychologist Marc E. Miller, Ph.D., for two separate psychological evaluations. (R. at 259-262, 590-594.) First, on January 10, 2017, Plaintiff met with Dr. Miller

for an initial evaluation.  (R. at 259-262.)  At that evaluation, Dr. Miller described Plaintiff as "a good informant, although he denied anxiety or depression," and noted that "it was apparent he is a very anxious individual in regard to his cardiac condition."  (R. at 260.)  Dr. Miller provided a functional assessment of Plaintiff's condition, noting that he indicates "no difficulty" in regard to understanding, remembering, and carrying out one and two step job instructions; that his abilities and interactions in regard to interacting with co-workers, supervisors, and the public appeared to be adequate; that his ability to maintain attention span and concentration appeared to be normal; and that he indicated some difficulty in regard to dealing with stress and pressure in a work setting.  (R. at 261.)  Dr. Miller concluded as follows:

> [Plaintiff] denies anxiety. However, throughout the interview, it was apparent he was anxious. He appears to have fear related to his heart condition. He quit his job due to constant chest pain. He indicates he feels shaky inside and exhibits hand tremors. He currently takes Celexa. Often, individuals with cardiac symptoms exhibit anxiety and fearfulness in regard to death.

(R. at 262.)  Dr. Miller diagnosed Plaintiff with a moderate adjustment disorder with depressed mood.  (*Id.*)

Plaintiff returned to Dr. Miller for a second psychological evaluation on May 15, 2017. (R. at 590-594.)  Dr. Miller described Plaintiff as "a good informant" who was cooperative and "was very anxious and agitated throughout the interview."  (R. at 592.)  After the interview, Dr. Miller indicated that Plaintiff's "abilities and limitations in regard to understanding, remembering and carrying out instructions indicate no difficulty," but that his "abilities to work with coworkers, supervisors and the public indicate difficulty."  (R. at 593.)  Dr. Miller wrote that Plaintiff "presents himself as [an] agitated, frustrated, anxious individual," and that his "abilities and limitations in regard to attention span and concentration note[] difficulty due to his

anxiety level." (R. at 593-594.) Dr. Miller noted that Plaintiff "cannot deal with stressful

situations in life." (R. at 594.) Dr. Miller concluded as follows:

> [Plaintiff] presents himself as a very anxious, agitated, irritable individual. He was
> very animated during the interview. He has a strong fear in regard to his heart
> condition. He does exhibit a generalized anxiety disorder at a moderate to severe
> level. There may also be some depression in regard to adjustment disorder."

(*Id.*) Dr. Miller diagnosed Plaintiff with a moderate to severe generalized anxiety disorder and a

moderate adjustment disorder with depressed mood. (*Id.*)

**D.     State Agency Consultants**

State Agency consultant Esberdado Villanueva, M.D., reviewed Plaintiff's file at the

initial level on January 17, 2017, and provided assessments of Plaintiff's physical RFC. (R. at

73-85.) Specifically, Dr. Villanueva found that Plaintiff could occasionally lift and/or carry up

to 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for

about six hours in an eight-hour workday; sit (with normal breaks) for about six hours in an

eight-hour workday; was otherwise unlimited in his ability to push and/or pull (including

operation of hand and/or foot controls); was frequently limited in climbing ramps/stairs; was

never limited in climbing ladders/ropes/scaffolds, and crawling; and was unlimited in his

balancing, stooping (i.e., bending at the waist), kneeling, crouching (i.e., bending at the knees),

and crawling. (R. at 79-80.) Dr. Villanueva found that Plaintiff had no other postural,

manipulative, visual, or communicative limitations, but that he had some environmental

limitations, as he should avoid concentrated exposure to extreme cold or extreme hot, and should

avoid even moderate exposure to hazards (machinery, heights, etc.). (R. at 80-81.)

Patricia Kirwin, Ph.D., reviewed Plaintiff's file at the initial level on January 17, 2017,

and provided assessments of Plaintiff's mental RFC. (R. at 81-82.) Dr. Kirwin found that

Plaintiff did not have understanding or memory limitations, but did have sustained concentration

and persistence limitations.  (R. at 81.)  Specifically, Dr. Kirwin found that Plaintiff was

moderately limited in the ability to carry out detailed instructions, the ability to maintain

attention and concentration for extended periods, the ability to work in coordination with or in

proximity to others without being distracted by them, and the ability to complete a normal

workday and workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest periods.  (R. at

81-82.)  Specifically, Dr. Kirwin noted that Plaintiff was "capable of maintaining attention and

concentration for 1-4 step tasks consistently and 5-6 step tasks occasionally [with] no high pace

or high production quotas."  (R. at 82.)  Dr. Kirwin also found that Plaintiff was moderately

limited in the ability to respond appropriately to changes in the work setting, but that there was

no evidence that Plaintiff had other adaptation limitations.  (*Id.*)

Dr. Villanueva reviewed Dr. Miller's January 10, 2017 opinion, giving it "little weight"

and noting that Dr. Miller's statements were "not entirely supported by findings" and "are

partially consistent."  (R. at 79.)  Dr. Villanueva also noted that Plaintiff's statements regarding

his physical symptoms were "fully consistent," but that his statements regarding his

psychological symptoms were "partially consistent."  (*Id.*)  Dr. Villanueva ultimately concluded

that Plaintiff was not disabled, with the following explanation:

> You said you were disabled due to cardiomyopathy, chronic heart failure, anxiety,
> tremors, tiredness, and high blood pressure. The medical records show that you are
> being treated and monitored for your conditions. While you may experience
> limitations due to your physical impairments, the medical records show that you
> still retain the capacity to perform light duty work in order to carry out less
> strenuous work related activities. While you may feel depressed or anxious at times,
> the medical records show that you still are able to perform simple tasks in order to
> carry out less demanding work related activities. We do not have sufficient
> vocational information to determine whether you can perform any of your past
> relevant work. However, based on the evidence in file, we have determined that
> you can adjust to other work. Because you retain the ability to perform a wide range
> of work related activities, we cannot find you to be disabled at this time.

(R. at 84-85.)

State Agency consultant Maureen Gallagher, D.O., reviewed Plaintiff's file at the reconsideration level on April 24, 2017, and agreed with most of Dr. Villanueva's above assessments.  (R. at 87-105.)  Dr. Gallagher found that Plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) was limited in his upper extremities; was occasionally limited in climbing ramps/stairs; and was frequently limited in crawling.  (R. at 98-99.)  Dr. Gallagher also found that Plaintiff was limited in both hands with regard to fine manipulation due to hand tremors, but she otherwise agreed with Dr. Villanueva's physical RFC assessment.

Vicki Warren, Ph.D., reviewed Plaintiff's file at the reconsideration level on May 19, 2019, and provided her own assessment of Plaintiff's mental RFC, largely agreeing with Dr. Kirwin's mental RFC.  (R. at 100-102.)  Dr. Warren found that Plaintiff was moderately limited in the ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from supervisors, and that he "would do best on tasks that can be completed on an independent basis and do not require collaboration with others."  (R. at 101-102.)

Dr. Gallagher reviewed Dr. Miller's January 10, 2017 opinion, affording it "little weight," as well as Dr. Miller's May 15, 2017 opinion, affording it "great weight" because it was "sufficient and well supported."  (R. at 98.)  Dr. Gallagher also concluded that Plaintiff was "Not Disabled," and provided following explanation:

> You said you were disabled due to cardiomyopathy, chronic heart failure, anxiety, tremors, tiredness, high blood pressure, depression, anxiety and memory issues. The medical records show that although your impairments may cause you some pain and other limitations, you are able to stand, walk and use your arms satisfactorily. Even though you may feel depressed and anxious at times and may have some memory issues, findings show you are able to think, communicate and

10

relate to others adequately. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. Because you retain the ability to perform a wide range of work related activities, we cannot find you to be disabled at this time.

(R. at 104-105.)

## IV.  ADMINISTRATIVE DECISION

On March 11, 2019, the ALJ issued her decision.  (R. at 12-31.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in any disqualifying substantial gainful activity since the alleged onset date of August 15, 2016.  (R. at 17.)  At step two, the ALJ found that Plaintiff has the following severe impairments:  carpal tunnel syndrome, coronary artery disease and chronic systolic heart failure / idiopathic cardiomyopathy, degenerative disc disease of the cervical and thoracic spine, obstructive sleep apnea, obesity, osteoarthritis of the left knee and right hip, and generalized anxiety disorder.  (*Id.*)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?

    2.    Does the claimant suffer from one or more severe impairments?

    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18.)  Then, at step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can:
>
> - Perform work that can generally be done while sitting or standing, with the option to alternate between sitting and standing, while remaining on-task and at the workstation;
> - Occasionally stoop, crouch, crawl, kneel, and climb stairs or ramps;
> - Frequently push/pull with upper extremities;
> - Frequently handle and finger;
> - Never engage in work where feeling is an essential job function;
> - Never be exposed to extremes of temperature or humidity, or to respiratory irritants more concentrated than those found in a typical grocery store;
> - Never be exposed to workplace hazards (such as ropes, ladders, scaffolds, unprotected heights, moving mechanical parts, or hazardous machinery);
> - Engage in occasional interaction with supervisors, co-workers, and the public;
> - Engage in simple duties, defined as those that can be learned within 30 days, and that require little or no judgment to perform;
> - Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed; and
> - Engage in no production-paced tasks, such as assembly line work, or fast food front counter work.

(R. at 20.)  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 21.)

The ALJ addressed each of Plaintiff's alleged impairments.  First, the ALJ discussed Plaintiff's alleged generalized anxiety disorder.  (R. at 21-23.)  Specifically, the ALJ discussed

12

Plaintiff's treatment records with his primary care physician at Fairfield Healthcare

Professionals, as well as the two examination reports from Dr. Miller and the mental RFCs

provided by the State Agency psychological consultants, Drs. Kirwin and Warren.  (*Id.*)  First,

the ALJ discussed Dr. Miller's opinions at great length, and ultimately decided to afford his

opinions "significant weight":

> Significant weight is given to the opinions by Dr. Miller because, considered together, his findings are consistent with his examinations. [Plaintiff] presented as agitated, impatient, frustrated, and anxious. Due to this anxiety, agitation, frustration, and depression, [Plaintiff] has been limited to simple tasks with little to no judgment, only occasional interaction with others at the workplace, and predictable work that is not production-paced. The corresponding limitations opined by Dr. Miller correlate consistently with the presentation of [Plaintiff], and are given significant weight.

(R. at 22.)  Next, the ALJ discussed Dr. Kirwin's opinion, affording it "some weight" because

"Dr. Kirwin's opinion that [Plaintiff] has no social limitations is not consistent" with Dr. Miller's

opinion, Dr. Warren's opinion, or the record.  (R. at 22-23.)  Finally, the ALJ reviewed Dr.

Warren's opinion, giving it "[g]reat weight" because it "is consistent with the findings of Dr.

Miller and the balance of the record."  (R. at 23.)

The ALJ then discussed Plaintiff's physical impairments, including "obstructive sleep

apnea, carpal tunnel syndrome, coronary artery disease, obesity, degenerative disc disease of the

cervical and thoracic spine, and osteoarthritis of the left knee and right hip."  (R. at 23-25.)  The

ALJ considered Plaintiff's medical records and hearing testimony, as well as the opinions of the

State Agency medical consultants, Drs. Villanueva and Gallagher.  (*Id.*)  The ALJ afforded Drs.

Villanueva and Gallagher's opinions "[s]ome weight," noting that "their opinions were

reasonably consistent with the evidence available at the lower level, but [Plaintiff's] testimony

and activities of daily living suggest greater exertional and postural restrictions are in order" and

that Plaintiff's carpal tunnel syndrome called for sedentary, not light, exertional work and frequent, but not constant, handling and fingering limitations. (R. at 24.)

Then, relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including: order checker, bench assembler, and hand packager. (R. at 25-26.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since the alleged date of onset on August 15, 2016. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff puts forth two assignments of error: that the ALJ failed to recognize Plaintiff's cervical radiculopathy as a medically determinable impairment, and that the that the ALJ's RFC determination is not supported by substantial evidence.  (ECF No. 9 at PAGEID ## 912-919.) First, Plaintiff argues that "[t]he evidence of the record clearly supports a finding that [Plaintiff's] cervical radiculopathy is [] a medically determinable impairment, as it has more than a 'minimal effect' on his ability to perform basic work activities and the record clearly and consistently documents this impairment[.]"  (*Id.* at PAGEID # 914.)  Plaintiff argues that by failing to recognize Plaintiff's cervical radiculopathy, the ALJ committed reversible error because even a non-severe impairment merits consideration throughout the evaluation process. (*Id.*)  Second, Plaintiff argues that the ALJ's RFC "is not an accurate representation of all the evidence of the record because the ALJ failed to fully address [Plaintiff's] concentration, persistence [or] pace limitations" which were opined by State Agency psychologist Dr. Warren and consultative examiner Dr. Miller.  (*Id.* at PAGEID ## 916-917.)  Plaintiff argues that although the ALJ afforded "great weight" to these opinions, she "failed to incorporate all of the limitations set forth by these medical sources" and "failed to explain [her] reasoning for any

15

inconsistencies and for not including all of the limitations in [her] residual functional capacity determination."  (*Id.* at PAGEID ## 918-919.)

In response, the Commissioner argues that "there is no reversible error in the ALJ's step two finding" because so long as the ALJ found other severe impairments at step two – which the ALJ did here – "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."  (ECF No. 11 at PAGEID # 925 (citation omitted).) The Commissioner contends that "the proper question is not whether the ALJ found an impairment severe at step two, but whether the ALJ's conclusion that Plaintiff could perform other work is supported by substantial evidence given the combination of all severe and nonsevere impairments."  (*Id.* at PAGEID # 926.)  The Commissioner concludes that "the ALJ reasonably accounted for Plaintiff's alleged cervical radiculopathy in the residual functional capacity and Plaintiff fails to present evidence that his radiculopathy caused any greater functional limitations than those stated in the residual functional capacity," and therefore the ALJ did not commit reversible error.  (*Id.*)

Next, the Commissioner argues that even though the ALJ afforded Dr. Miller and Dr. Warren's opinions great weight, "the ALJ's residual functional capacity did not have to be a verbatim recitation" of those opinions.  (*Id.* at PAGEID ## 927-928.)  The Commissioner argues that the ALJ considered the entire record to formulate the RFC, including all of the opinions, Plaintiff's treatment history, the objective medical evidence, and Plaintiff's daily activities, and that the ALJ did not abuse her discretion in weighing that evidence and formulating the RFC. (*Id.* at PAGEID ## 928-929.)  The Commissioner concludes that because the ALJ's decision is supported by substantial evidence, the Court should affirm it.  (*Id.* at PAGEID # 923.)

Plaintiff did not file a Reply brief.  Accordingly, the matter is ripe for judicial review.

The Court will analyze each of Plaintiff's arguments separately.

**A.      The ALJ Did Not Commit Reversible Error at Step Two by Failing to Recognize Plaintiff's Cervical Radiculopathy as a Medically Determinable Impairment.**

First, Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's cervical

radiculopathy as a medically determinable impairment at step two of the evaluation process

constitutes reversible error.  As the Court of Appeals for the Sixth Circuit and this Court have

observed several times, step two of the evaluation process is merely meant to "screen out totally

groundless claims," and it is well settled that where an ALJ "considers all of a claimant's

impairments in the remaining steps of the disability determination, any perceived failure to find

additional severe impairments at step two [does] not constitute reversible error."  *Kestel v.*

*Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (quotations omitted) (citing *Fisk v.*

*Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837

F.2d 240, 244 (6th Cir. 1987)).  As this Court has specifically held:

> *Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless*. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]' Where an ALJ finds at least one severe impairment and considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error.

*Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug.

11, 2020) (emphasis added; internal quotations and citations omitted).

Here, the ALJ found that Plaintiff had several impairments at step two of the evaluation

process, and rightfully proceeded to the remaining steps of the disability determination.  (R. at

17-18.)  Even assuming, *arguendo*, that the ALJ should have discussed Plaintiff's cervical

radiculopathy at step two, as Plaintiff contends, such error was harmless because the ALJ

considered Plaintiff's cervical radiculopathy at step four of the disability determination.  (R. at 24 ("On August 16, 2018, the claimant underwent an EMG study, which indicated severe bilateral carpal tunnel syndrome, and left C7-C8 cervical radiculopathy.") (citing R. at 847-850.).)  The ALJ also expressly considered Plaintiff's neck pain and concluded that, "[a]s a result, and in combination with his other physical impairments, I have limited [Plaintiff] to the sedentary exertional level with several postural and manipulative limitations[.]"  (R. at 24.)  Plaintiff is therefore wrong to suggest that the ALJ 'failed to even recognize [Plaintiff's] cervical radiculopathy in any capacity."  (ECF No. 9 at PAGEID # 914.)  Rather, the ALJ acknowledged and discussed Plaintiff's cervical radiculopathy and the effect it had on how the ALJ devised Plaintiff's RFC, supporting her decision with substantial evidence from the record.  *Rosshirt*, 2020 WL 4592393 at *3.  Accordingly, Plaintiff's first objection is not well taken.

**B.     Substantial Evidence Supports the ALJ's RFC Finding, Including as to Plaintiff's Limitations in Concentration, Persistence, or Pace.**

As to Plaintiff's second argument, the determination of a claimant's RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted). The ALJ must also consider all medical opinions he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c).

Here, Plaintiff argues that the ALJ did not appropriately incorporate the opinions of Drs. Miller and Warren into her RFC. (ECF No. 9 at PAGEID # 916-919.) Specifically, Plaintiff contends that these doctors both "clearly opined that [Plaintiff] would have difficulty maintaining attention and concentration and performing at a consistent pace without interruptions," but "the ALJ failed to include these limitations in her [RFC]." (*Id.* at PAGEID # 917.) As the Commissioner correctly points out, however, "the ALJ's [RFC] did not have to be a verbatim recitation" of any doctor's opinion. (ECF No. 11 at PAGEID # 928.) "[T]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017). A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for . . . setting aside the ALJ's factual findings." *Id.* (citing *Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987)). Further, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency [consultant's] opinions verbatim; nor is the ALJ required to adopt the state agency [consultant's] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citations omitted).

Here, the Court finds that the ALJ's decision is supported by substantial evidence, including as to Plaintiff's limitations in concentration, persistence or pace. After considering the

19

entire record, including affording "significant weight" to Dr. Miller's opinion and "great weight" to Dr. Warren's opinion, the ALJ cited substantial evidence in concluding that Plaintiff was limited to "simple duties, defined as those that can be learned within 30 days, and that require little or no judgment or perform[;] . . . occasional interaction with supervisors, co-workers, and the public[;] . . . [and] predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed." (R. at 20.)

The Undersigned rejects Plaintiff's suggestion that the ALJ's RFC "fails to accurately and fully convey [Plaintiff's] limitations in concentration, persistence and pace." (ECF No. 9 at PAGEID ## 917-918.) Specifically, the Undersigned disagrees with Plaintiff's argument that "the ALJ failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job," or that "the ALJ failed to accommodate [Plaintiff's] consistent irritability; inability to adequately handle instruction and criticism from supervisors; and inability to collaborate with others." (*Id.* at PAGEID # 918.) As to Plaintiff's inability to stay alert or work at a consistent pace, the ALJ expressly limited Plaintiff to "simple duties" with "predictable work activity" and "no production-paced tasks." (R. at 20.) And as to Plaintiff's irritability and inability to interact appropriately with others, including supervisors, the ALJ limited Plaintiff to "occasional interaction with supervisors, co-workers, and the public." (*Id.*)

Plaintiff challenges that the ALJ's RFC did not parrot the medical opinions in the record verbatim, but Drs. Miller and Warren's opinions nevertheless support the ALJ's RFC. The Court must therefore defer to the ALJ's RFC determination. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial

evidence, based on the record as a whole.") (internal citations omitted).

To be clear, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for the RFC determination, including as it relates to Drs. Miller and Warren's proposed limitations, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")).  Under these circumstances, the Undersigned finds no merit to Plaintiff's second statement of error.

For these reasons, it is **RECOMMENDED** that Plaintiff's contentions of error be **OVERRULED**, and the Commissioner's decision be **AFFIRMED**.

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 19, 2021                  */s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**